THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,   :
             :
  v.          :  **3:18-cr-265**
             :  **(JUDGE MARIANI)**
HAKIM WILBURN,     :
             :
     Defendant.  :

## MEMORANDUM OPINION

### I. INTRODUCTION

On December 18, 2019, pursuant to a written and signed plea agreement (Doc. 47), Hakim Wilburn entered a plea of guilty as to Count 1 of a Superseding Information (Doc. 43) charging that from on or about June 1, 2015 and continuing to on or about August 14, 2018, Wilburn conspired to distribute and possessed with intent to distribute one kilogram and more of heroin and 500 grams and more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  On December 3, 2020, Wilburn was sentenced to a term of incarceration of 198 months and 10 years of supervised release.  (Doc. 96.)

Presently before the Court is Wilburn's 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 125.)  For the reasons set forth below, the Court will deny Wilburn's § 2255 Motion.

## II. BACKGROUND

From June of 2015 to August 2018, the Federal Bureau of Investigation ("FBI") and local authorities in Northeastern Pennsylvania investigated Wilburn and others for activity related to the trafficking and sale of controlled substances, including heroin and cocaine. (Presentence Investigation Report ("PSR"), Doc. 77, ¶ 7.) Multiple cooperating witnesses and confidential informants provided information to law enforcement about Wilburn's drug business and its operations and participated in controlled purchases of narcotics from Wilburn or his wife, Danielle Moorer. (*See e.g., id*. at ¶¶ 7, 8, 10-22.)

Controlled purchases were conducted involving distribution of a variety of controlled substances from those involved in Wilburn's conspiracy. (*Id.* at ¶¶ 7-23.) Each controlled purchase involved confidential informants who placed drug orders, followed by either Wilburn or a co-conspirator delivering drugs to the informant. (*Id.* at ¶¶ 7-23.)

Wilburn obtained heroin from New York and transported the drugs to Newark, New Jersey, where he would then pay a family member to transport the heroin to Wilkes-Barre, Pennsylvania. (*Id.* at ¶ 9.) Wilburn stored drugs at a residence he owned as well as at different storage facilities in the Wilkes-Barre and Swoyersville, Pennsylvania area. (*Id*.)

On August 14, 2018, a federal grand jury in the Middle District of Pennsylvania returned a 14-count Indictment charging Wilburn and Moorer with multiple drug trafficking offenses involving heroin and cocaine. (Doc. 1.)

On August 15, 2018, authorities executed a search warrant at Wilburn and Moorer's residence in Hanover Township; another property in Hanover Township; their leased self-storage unit in Wilkes-Barre; Wilburn's 2012 Jeep Grand Cherokee; and Moorer's 2003 Chevrolet van. Investigators recovered 45 bricks of heroin/fentanyl and a Ruger Semi-Automatic Pistol at Wilburn's storage facility and three other firearms at their Boland Avenue residence. (Doc. 77, ¶ 23.)  Wilburn was arrested that same day, arraigned and entered a plea of not guilty before Magistrate Judge Joseph Saporito. (*See* Docs. 16, 20, 21.)

On December 18, 2019, pursuant to a written plea agreement (Doc. 47), Wilburn pleaded guilty to Count 1 of a Superseding Information (Doc. 43) charging that from on or about the first day of June 2015, and continuing to on or about August 14, 2018, he conspired to distribute and possessed with intent to distribute one kilogram and more of heroin and 500 grams and more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Superseding Information further stated that:

> Before the defendant committed the offense charged in this count, the defendant was convicted of Distribution and Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1), in United States District Court, District of New Jersey, Case # 1:02-CR-746, a serious drug felony, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

(Doc. 43, at 2.)[1]

---

[1] Previously, on July 23, 2019, the Government filed an "Amended Information of Prior Convictions of Controlled Substance Offenses", pursuant to 21 U.S.C. § 851(a),

The plea agreement explained that the maximum penalty for the offense for which Defendant was pleading guilty was "imprisonment for a period of life but a mandatory minimum period of 15 years, . . .[and] a maximum term of supervised release of life but a minimum term of at least 10 years. . ."  (Doc. 47, ¶ 1.)  In the two subsequent paragraphs, the plea agreement reiterated that "Count 1 [of the Superseding Information] carries a mandatory minimum period of imprisonment of 15 years" and that the court must also impose "at least a 10 year term of supervised release. . ."  (*Id.* at ¶¶ 2, 3.)

Additional terms of the plea agreement included:

With respect to the application of the Sentencing Guidelines to the defendant's conduct, the parties agree to recommend as follows: for purposes of the U.S.S.G.,  the defendant is responsible for the distribution of, and possession with intent to distribute, at least 1 kilogram but less than 3 kilograms of heroin; and the defendant is responsible for the distribution of, and possession with intent to distribute, at least 500 grams but less than 2 kilograms of cocaine.

. . .

At the time of sentencing, the United States may make a recommendation that it considers appropriate based upon the nature and circumstances of the case and the defendant's participation in the offense, and specifically reserves the right to recommend a sentence up to and including the maximum sentence of imprisonment and fine allowable, together with the cost of prosecution.

---

inform[ing] this Honorable Court and the defendant that the United States intends to rely upon the following prior conviction of the defendant in support of the imposition in sentencing of increased punishment by reason of such convictions; to wit, the Distribution and Possession with Intent to Distribute a Controlled Substance, in the United States District Court, for the District of New Jersey, Case Number: 1:02-cr-746, a serious drug felony, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

(Doc. 42.)

4

(*Id.* at ¶¶ 13, 14.)

Following Defendant Wilburn's December 18, 2019, change of plea hearing, the

United States Probation Office conducted a presentence investigation and prepared a

Presentence Investigation Report (Doc. 77.)  The PSR calculated Wilburn's total offense

level to be 35, determined that Wilburn was a career offender and that, while he had a total

criminal history score of 8 which would establish a criminal history category of IV, Wilburn's

criminal history score was VI as mandated for a career offender.  (*Id*. at ¶¶ 40, 58.) Based

upon a total offense level of 35 and a criminal history category of VI, the guideline

imprisonment range was 292 to 365 months imprisonment.  (*Id*. at ¶ 93.)  No Objections to

the PSR were filed at that time.  (*See* Doc. 78.)  Sentencing was thereafter scheduled to be

held on December 3, 2020 (Doc. 84.)

On December 1, 2020, the Probation Office filed a Second Addendum to the

Presentence Report, stating:

> On November 30, 2020, Defense Counsel, David P. Cherundolo, contacted the
> probation office and advised that he intends to provide argument at sentencing
> objecting to the enhancements for maintaining a drug premise [(USSG
> §2D1.1(b)(12)] and criminal livelihood [(USSG §2D1.1(b)(16)(E)]. Defense
> Counsel is aware that the enhancements do not change the advisory guideline
> range because of Hakim Wilburn's career offender status. The probation officer
> stands by the information set forth in the presentence report including the
> sentencing guideline calculations, which reflect a total offense level of 35, a
> criminal history category VI, and an advisory imprisonment range of 292 to 365
> months.

(Doc. 88.)

Also on December 1, 2020, two days prior to Wilburn's scheduled sentencing date, the Third Circuit issued a precedential opinion in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020), holding that inchoate crimes such as conspiracies and attempts were not "controlled substance offenses" as defined in U.S.S.G. § 4B1.2(b), *Nasir*, 982 F.3d at 160. In light of the *Nasir* decision, the Probation Office issued a Third Addendum to the PSR on December 3, 2020, which stated that Wilburn was no longer considered to be a career offender, reduced his criminal history category from VI to IV, and re-calculated his sentencing guideline provisions to be 235 to 293 months. (*See* Doc. 91.)  Despite the new sentencing guideline calculation, the Third Addendum noted that "the defendant's statutory sentencing options, including the mandatory minimum term of 15 years imprisonment remains."  (*Id.*).

On December 2, 2020, Defendant's counsel filed a sentencing memorandum wherein he argued, in relevant part, that the two-point enhancement for "organizer or leader pursuant to U.S.S.G. § 3B1.1(c) was "improperly added because of the nature of the relationship between Wilburn and Moorer and the fact that their criminal activities were so deeply joined." (Doc. 90, at 4.)

At Wilburn's December 3, 2020, sentencing hearing, the Court heard argument from the Government regarding the sentencing enhancements at issue and disagreed with Wilburn's arguments in favor of a variance. (Hr'g Tr., Doc. 100, at 5-24.) Specifically, defense counsel argued that the Court should vary downwards in its sentence because

6

Wilburn acted more as a co-defendant rather than an organizer or leader with respect to the criminal activity. (*Id*.at 5-6.)

The Court also addressed the *Nasir* decision at the sentencing hearing and determined that Wilburn's plea of guilty to conspiracy to distribute and possession with intent to distribute controlled substances, no longer rendered him a career offender. (*Id.* at 2-3.) This produced a criminal history category of IV and an adjusted advisory sentencing guideline range of 235 to 293 months. (*Id.* at 3.) Prior to sentencing, the Government filed a Motion for Downward Departure requesting that the Court depart three levels and impose a reduced sentence.[2] (Doc. 86.) The three-level departure resulted in a reduction of the sentencing guideline range to 168-210 months. Nonetheless, because the Government had previously filed an Information to Establish Prior Conviction (Doc. 42), Wilburn faced a mandatory minimum sentence of 180 months, or 15 years.  The Court imposed a sentence of 198 months' incarceration. (Doc. 96.)

Wilburn appealed his judgment and conviction. (Doc. 97.)  The Third Circuit thereafter affirmed this Court's judgment and sentence on March 14, 2022. *See United States v. Wilburn*, 2022 WL 819521 (3d Cir. 2022).

---

[2] In the Government's Motion for Downward Departure, the Government requested that the Court impose a guideline sentencing range of 210-262 months. (Doc. 86, ¶ 9.) This request was made prior to the Third Circuit's decision in *Nasir*.  Therefore, because at the time of sentencing Wilburn was no longer considered to be a career offender for purposes of sentencing, applying the downward departure requested by the Government (Doc. 86), Wilburn's sentencing guideline range was 168-210 months.

On August 8, 2023, Wilburn filed a "Motion Under 28 U.S.C. § 2255" (Doc. 125) arguing that his conviction and sentence should be vacated under 28 U.S.C. § 2255 due to his attorney's ineffective assistance of counsel.  In response to this Court's Order (Doc. 127), on October 10, 2023, a Notice of Election signed by Wilburn was filed of record, informing the Court that he "cho[se] to have the Court rule on my petition as filed" (Doc. 128.)  The Government thereafter filed a brief in opposition to Defendant's § 2255 motion (Doc. 144), to which Wilburn filed a Reply (Doc. 145.)

### III. STANDARD OF REVIEW

#### a. 28 U.S.C. § 2255

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of

8

the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the Court of

Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a
> defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255,
> our caselaw has imposed limitations on the exercise of that discretion. In
> considering a motion to vacate a defendant's sentence, "the court must accept
> the truth of the movant's factual allegations unless they are clearly frivolous on
> the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865
> F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The
> District court is required to hold an evidentiary hearing "unless the motion and
> files and records of the case show conclusively that the movant is not entitled
> to relief." *Id.* We have characterized this standard as creating a "reasonably low
> threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting
> *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court
> abuses its discretion if it fails to hold an evidentiary hearing when the files and
> records of the case are inconclusive as to whether the movant is entitled to
> relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under
> § 2255 that are not clearly resolved by the record, the District Court [is]
> obligated to follow the statutory mandate to hold an evidentiary hearing.").

*Id.* at 545-46. Generally, the petitioner bears the burden of proof in § 2255 proceedings.

*See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised for the first time on

collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on

an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out

in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1)

that counsel's performance was deficient, that is, it fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht*

*v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 689–92). For the first prong, *Strickland* emphasizes that a court's evaluation of an attorney's performance must be "highly deferential" so as to diminish "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. To establish prejudice under *Strickland*'s second prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The petitioner bears the burden of establishing that counsel's performance was constitutionally inadequate and prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). In asserting prejudice, the petitioner must show more than a conceivable likelihood that the outcome would have been different.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U. S. [15] (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U. S., at 693. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693.

*Harrington v. Richter*, 562 U.S. 86, 112-113 (2011).

## IV. ANALYSIS

Wilburn's § 2255 Motion (Doc. 125) seeks relief on the basis that he received ineffective assistance of counsel. Wilburn sets forth eight grounds for relief.[3] First, Wilburn alleges that his counsel was ineffective for "failing to pro[vide the] sentencing exposure." (*Id.* at 4.) Second, Wilburn alleges that his counsel was ineffective because "Defendant claims he is actually innocent" and that "Defendant told his Attorney that he is innocent of the heroin charges and that it never happened." (*Id.* at 5.) Third, Wilburn alleges that his counsel was ineffective because he "failed to file suppression and fatico motion." (*Id.* at 6). Fourth, Wilburn alleges that his counsel was ineffective because he "failed to investigate" and that he "did not contest the validity of the claims nor contest the sentencing enhancements that was use[d] against the defendant." (*Id.* at 7.) Fifth, Wilburn alleges that his counsel was ineffective for "fail[ing] to give sufficient advice" and that "Defendant plead to all charges which included an 851 enhancement and would have not if he knew it would be included in the sentence." (Doc. 125, at 8.) Sixth, Wilburn alleges that his counsel was ineffective because he "failed to negotiate plea offers" and that he "failed him in every aspect of the plea proceedings and sentencing hearings and that made the Attorney ineffective." (*Id.* at 8.) Seventh, Wilburn "ask[s] the Court to appoint me an attorney.

---

[3] Wilburn did not file a brief in support of his § 2255 Motion and his motion does not provide any concrete statements of fact pertaining to his counsel's alleged ineffectiveness. Wilburn chose to proceed with his petition as filed in his Notice of Election (Doc. 128) where only conclusory statements are presented. Wilburn is unable to make out an adequate basis for a hearing or relief based on these conclusory statements alone. *See Albrecht*, 485 F.3d at 127 (citing *Strickland*, 466 U.S. at 689-92). Nonetheless, out of an abundance of caution, the Court will analyze herein Wilburn's grounds for relief.

3006(A)."[4] Finally, Wilburn alleges that his counsel was ineffective because he "sold [*sic*] me that I would get no more than 15 years But [*sic*] I received 16 ½ years." (*Id*. at 8.)

For the reasons set forth herein, Wilburn's allegations do not warrant a hearing or relief. The Court address each of Wilburn's alleged grounds for relief in the order in which they were raised.

## A. Ground One

Wilburn's first ground for relief alleges that "[a]ttorney failed to provide sentencing exposure" and that "if he provided with the sentencing exposure; he would have never pled to the charges in the first place." (Doc. 125, at 4.)

To comport with the Fifth Amendment, a defendant's plea must be voluntary and intelligent. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). To satisfy *Strickland*'s "objective standard of reasonableness" with respect to a plea, 466 U.S. at 688, an attorney must "give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer'", *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, 571 U.S. 1224 (2014). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

---

[4] The Court will address this ground separately in the "Request for Counsel" section set forth at the end of this Court's memorandum opinion.

Wilburn's claim of ineffectiveness or prejudice by his counsel's performance is belied by the fact that Wilburn was made fully aware of his sentencing exposure both when he signed his plea agreement and when he pled guilty before the Court. First, contained within the plea agreement that Wilburn signed and acknowledged on July 16, 2019, was a clause that stated:

> [t]he defendant agrees to waive indictment by a grand jury and plead guilty to a Superseding Information, which will be filed against the defendant by the United States Attorney for the Middle District of Pennsylvania. That Superseding Information will charge the defendant with a violation of Title 21, United States Code, § 846, Conspiracy to Unlawfully Distribute and Possession with Intent to Distribute Controlled Substances. **The maximum penalty for that offense is imprisonment for a period of life but a mandatory minimum period of 15 years**, a fine of $20,000,000, a maximum term of supervised release of life but a minimum term of at least 10 years, which shall be served at the conclusion of, and in addition to, any term of imprisonment, as well as the costs of prosecution, imprisonment, probation, or supervised release ordered, denial of certain federal benefits, and an assessment in the amount of $100. At the time the guilty plea is entered, the defendant shall admit to the court that the defendant is, in fact, guilty of the offense(s) charged in that count. . .

(Doc. 47 at ¶ 1) (bold added.)

The plea agreement put Wilburn on notice that "the maximum penalty for [his] offense is imprisonment for a period of life but a mandatory minimum period of 15 years." (*Id*.) Upon signing the plea agreement, Wilburn attested that "I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." (*Id*. at 34.) Thus, Wilburn's claim that his counsel did not advise him of his sentencing exposure is belied by the contents of his knowing and voluntary plea agreement that he signed.

Additionally, at Wilburn's change of plea hearing, the Court conducted an extensive

plea colloquy that informed Wilburn of his sentencing exposure:

> THE COURT: You do understand that the terms of the plea agreement are simply recommendations to me and I can reject those recommendations without allowing you to withdraw your guilty plea and can impose a sentence that may be more severe than what you expect?
>
> MR. WILBURN: Yes.
>
> . . . .
>
> THE COURT: I'm obliged to tell you that in this case, the maximum sentence for conspiracy to distribute or possess with intent to distribute 1 kilogram or more of heroin and 500 grams or more of cocaine is a life in prison with a mandatory minimum of 15 years, at least 10 years of supervised release, up to life, a $20 million fine, and a $100 special assessment.
>
> Do you understand those things?
>
> MR. WILBURN: Yes.

(Hr. Tr., Doc. 134, at 4-5.)

The Court also asked the Government to provide an explanation of the charges

against Wilburn and his potential sentencing exposure, which the Government provided in

detail:

> THE COURT: I'm going to ask Ms. Olshefski to outline the critical points of the plea agreement, and I want you to listen carefully.
>
> Ms. Olshefski.
>
> MS. OLSHEFSKI: Your Honor, Paragraph 1 of the plea agreement indicates that the defendant has agreed to waive indictment on a superseding information which has been filed against him in the Middle District of Pennsylvania.

The superseding information charges the defendant with a violation of Title 21, United States Code, Section 846, which is conspiracy to unlawfully distribute and possess with the intent to distribute controlled substances.

The maximum penalty for that offense is imprisonment for a period of life, but a mandatory minimum period of 15 years, a fine of $20 million, a maximum term of supervised release of life, but a minimum term of at least 10 years, which shall be served at the conclusion of and in addition to any term of imprisonment, as well as the costs of prosecution, imprisonment, probation, or supervised release ordered, the denial of certain Federal benefits, and an assessment in the amount of $100.

At the time the guilty plea is entered, the defendant shall admit to the Court that he is, in fact, guilty of the offense charged in the superseding information.

Paragraph 2, again, is evidence of the defendant's understanding that Count 1 carries a mandatory minimum term of imprisonment of 15 years.

Paragraph 4 of the plea agreement again restates the maximum potential, further evidencing the defendant's understanding that the maximum statutory penalty is life imprisonment, but a mandatory minimum of 15 years. The total maximum fine is $20 million and a lifetime of supervised release, the denial of certain Federal benefits, and an assessment in the amount of $100.

. . . .

Your Honor, at Paragraph 25, this is a paragraph that evidences the defendant's understanding that if the Court -- that the Court is not a party to this agreement, it is not bound by this agreement, or any recommendations made by the parties herein, thus the Court will be free to impose upon the defendant any sentence, up to and including the maximum sentence of life, a fine of $20 million, and the maximum term of supervised release of life, in addition to the costs of prosecution and the denial of certain Federal benefits and a $100 special assessment.

Paragraph 26 evidences the defendant's understanding that if the Court imposes a sentence with which the defendant is dissatisfied, the Court will not be permitted – the defendant will not be permitted to withdraw any guilty plea for that reason alone, nor will the defendant be permitted to withdraw any plea

should the Court decline to follow any recommendations by any of the parties to this agreement.

. . . .

This is an agreement that is signed by the defendant; Hakim Wilburn, by counsel; David Cherundolo, and by myself on behalf of the United States.

THE COURT: Any questions about any of that?

MR. WILBURN: No.

(*Id*. at 7-11.)

Even if the Court were to assume that Wilburn's counsel indicated to Wilburn that he would get no more than 15 years imprisonment and failed to explain Wilburn's sentencing exposure, the Third Circuit has made clear that "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where an adequate plea hearing was conducted," *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal citation, quotations and ellipses omitted.) Wilburn's plea agreement, as well as the transcript of the change of plea hearing, reveal that Wilburn was repeatedly informed of his potential sentencing exposure. The plea agreement and the change of plea hearing transcript also demonstrate that Wilburn reviewed the terms of the plea agreement with his counsel and was satisfied with his counsel's performance.

Wilburn does not meet the reasonableness or prejudice prongs of *Strickland* with respect to his first ground for relief and no hearing or relief is warranted on this basis. *See Strickland*, 466 U.S. at 689-92.

## B. Ground Two

Wilburn's second ground for relief alleges that "he is actually innocent" and that he "told his Attorney that he is innocent of the heroin charges and that it never happened." (Doc. 125, at 5.)

First, Wilburn's allegation that he "told his Attorney that he is innocent of the heroin charges and that it never happened," without more, does not provide any concrete support for finding that his counsel's performance "fell below an objective standard of reasonableness." *Albrecht,* 485 F.3d at 127. Additionally, because Wilburn voluntarily pled guilty to the charge against him, his belated assertion of innocence fails to support a finding that he was prejudiced in any way because of his counsel's performance.

Second, as the Court described, *supra*, by signing his plea agreement with the Government, Wilburn agreed to admit guilt, an admission he then made under oath in Court in response to the Court's inquiry during the plea colloquy. Expressly written in the plea agreement, which Wilburn admitted to knowingly and voluntarily signing, is a statement indicating that, "[a]t the time the guilty plea is entered, the defendant shall admit to the court that the defendant is, in fact, guilty of the offense(s) charged in that count." (Doc. 47 at 2.) Wilburn's present assertion of innocence affords him no basis of relief where he expressly agreed to admit guilt in his plea agreement and then did so knowingly and voluntarily at his change of plea hearing.

At the change of plea hearing, the Government explained the extensive nature of the

crimes committed by Wilburn, to which Wilburn knowingly and voluntarily admitted guilt:

THE COURT: Do you further understand that if I accept your plea today, there will be no trial and you will have waived or given up your right to a trial, as well as all of the other rights connected with a trial that I just told you about? Do you understand that?

MR. WILBURN: Yes.

THE COURT: Now I'm going to explain the elements of the offense, in this case the conspiracy to possess with the intent to distribute or to distribute the heroin and cocaine.

The elements are -- and I want you to listen carefully because I will ask if you are guilty of each of these things -- Number 1, there was an agreement or understanding by two or more people to violate the Federal drug laws; Number 2, that you had knowledge of the essential element -- I'm sorry -- essential objective of this agreement or understanding or conspiracy; and third, that you willfully and voluntarily became a member of this agreement, understanding, or conspiracy in order to further its unlawful purpose.

Are you guilty of each of those elements?

MR. WILBURN: Yes.

THE COURT: Again, I want you to listen carefully because I'm going to ask Ms. Olshefski to outline in summary fashion the evidence that would be presented at trial that would satisfy these elements.

MS. OLSHEFSKI: Your Honor, if this case were to proceed to trial, the United States would prove the defendant's guilt beyond a reasonable doubt with the following forms of evidence: There would be lay witness testimony, there would be the testimony of cooperators, as well as law enforcement officers, the FBI initiated this investigation and engaged in recorded calls and controlled purchases, those multiple recorded calls, text messages, cell phone evidence, physical evidence in the form of controlled substances seized from the defendant pursuant to the execution of search warrants, scientific evidence, firearms, the defendant's statements, and through all of those forms of

evidence and witnesses, the United States would prove that from a period of time beginning in June of 2015 through August 14th of 2018, within the Middle District of Pennsylvania and elsewhere, because the jury would hear that sources of these controlled substances distributed by the defendant included both New Jersey and New York, we would prove that the defendant conspired with others to obtain and possess these controlled substances throughout that period of time, and those controlled substances would include the quantities that he has agreed to in the plea agreement, heroin and cocaine. Essentially that's the summary, Your Honor.

THE COURT: Are those things true?

MR. WILBURN: Yes.

THE COURT: I'm going to ask you now, Mr. Wilburn, how you plead to the charge contained in the superseding information, guilty or not guilty?

MR. WILBURN: Guilty.

(Hr. Tr., Doc. 134, at 13:11-15:14.)

Wilburn's claim that he is innocent of the very crimes to which he knowingly and

voluntarily pled guilty cannot be reconciled with his repeated admissions under oath that he

was guilty. More importantly, it does not implicate his counsel's performance. His assertions

do not reveal any error by his counsel or prejudice to Wilburn resulting from his counsel's

performance. Therefore, the Court finds that Wilburn is not entitled to relief on this basis.

## C. Ground Three

Wilburn's third ground for relief alleges that his "[a]ttorney failed to file suppression

and [F]atico motion" and that Wilburn "requested that his attorney file both of those type [sic]

of motions and his [a]ttorney failed to do so." (Doc. 125 at 6.)

The Third Circuit recently reiterated that judicial scrutiny of counsel's strategy must be viewed with significant deference:

> [W]e are cognizant that "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S. at 697]; *Burt v. Titlow*, 571 U.S. 12, 22-23, 134 S.Ct. 10, 187 L.Ed.2d 348 (2013); *see also United States v. McCoy*, 410 F.3d 124, 135 (3d Cir. 2005) ("[C]ourts have been highly deferential to counsel's strategic decisions."). And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that "advocacy is an art and not a science, and ... strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681, 104 S.Ct. 2052.

*Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022).

Here, Wilburn has failed to offer any explanation as to what evidence he believes should have been suppressed, and how a failure to suppress that evidence has resulted in actual prejudice, *see Strickland*, 466 U.S. at 693. Wilburn's conclusory statement that his attorney was ineffective for failing to file a motion to suppress, without stating what he sought to be suppressed, does not meet either prong of the *Strickland* analysis.

Similarly, Wilburn's statement that his counsel should have requested a *Fatico* hearing, without more, does not establish deficient performance by Wilburn's counsel or prejudice to Wilburn.[5] *See United States v. Santiago*, 330 F. App'x 234, 238-39 (2d Cir. 2009) ("a defendant's counsel may properly decide to forego a *Fatico* hearing as a matter of strategy, and we presume that such a strategy is sound absent a strong showing to the

---

[5] A *Fatico* hearing allows a judge to determine whether disputed allegations in a government sentencing memorandum should be considered in the sentencing decision. *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979), *cert. denied*, 444 U.S. 1073 (1980).

contrary.") (internal citation and quotations omitted.). Here, there is nothing in the record to support a finding that there were any genuinely contested evidentiary issues as to the calculation and determination of the sentence to be imposed.

Being "highly deferential" to counsel's strategic decisions, as this Court must, *Gaines*, 33 F.4th at 712, and "absent a strong showing to the contrary," *Santiago*, 330 F.App'x at 238-39, the Court finds that Wilburn's conclusory and unsupported claim fails under both prongs of *Strickland*, and Wilburn is thus not entitled to a hearing or any relief on this basis.

## D. Ground Four

Wilburn's fourth ground for relief alleges that his "[l]awyer failed to investigate" and that his "[a]ttorney did not contest the validity of the claims [and did] not contest the sentencing enhancements that was used against the defendant." (Doc. 125 at 7.)

Wilburn provides no explanation of what his attorney failed to investigate, or how any additional investigation would have changed the outcome of his decision to plead guilty or would have resulted in the imposition of a lower sentence. Because Wilburn fails to provide any specific factual assertions to support his conclusory allegation that his attorney "failed to investigate," or how that failure resulted in prejudice to him, this allegation does not entitle Wilburn to any relief.

The sentencing transcript also belies Wilburn's argument that his counsel did not

advocate for him at the sentencing hearing or contest any of the sentencing enhancements,

including the enhancement for being an organizer and leader:

THE COURT: [...] With that guideline range having been determined, we will proceed to the factors of section 3553(a) in arriving at a just punishment under those factors. Let me begin by asking Mr. Cherundolo to make a statement on behalf of Mr. Wilburn.

MR. CHERUNDOLO: Thank you, Your Honor. I think the first thing we have to start with is that Mr. Wilburn is 50 years old. He's kind [of] at the top of the range of people we normally have in court. Usually I am here with 20 somethings or 30 somethings. Well, Mr. Wilburn is 50. And I think you have to start with looking at, you know, his early life. He had a one-parent home, a dad who was totally out of the picture and the mother who it appears had some mental health problem and just had a very difficult time keeping the family in the stationary sense in that she couldn't afford to feed her kids or to keep them in one home. At one point they ended up living with the grandmother, and at one point the children were actually in county custody in a foster system. It seems like he had very little direction, and we just had now a brief discussion regarding this.

And he sees now coming from his standpoint in life what's happening to other guys he's with in the same block at the jail and who are in their 20s, you know, who think they're, you know, full of everything not realizing where they're headed. He knows where he's headed because he arrived there. You know, he has a record that dates back from -- to a very early age. It seems like as he progressed through life – and he did end up in the Wilkes-Barre area. You know, he did have some legitimate work along with other drug transactions. This next argument, Your Honor, is more in the sense of asking for a variance.

It should have been filed as a departure, but I didn't file it because as of this morning it was kind of a moot point. I don't see Hakim as an organizer. I see him as a codefendant and someone who acted in concert with his wife. And I'm getting that just by looking at the offense conduct that is laid out in paragraph 7 through 23 in the P.S.R.

If you note every paragraph either says Hakim and Danielle, this, that, or the other thing, and a lot of the paragraphs have Danielle actually making deliveries

out in the streets. You know, as I said, they're co-defendants, they're husband and wife, their [*sic*] ostensibly partners in the construction business, and they were partners in this business unfortunately, which finds himself here.

So I would like you to look at it as if he was not an organizer of this, but, you know, just at the same level as Danielle and Danielle at the same level as he is. The only other thing I will argue is that, as you know, we're looking at a mandatory minimum of 180 months. He is also looking at a supervised release situation which is not going to be dealt with today but I presume will be dealt with in the near future. It will add additional time. He's 50 years old as I said. 180 months is a long time no matter which way you look at it. I know the conduct here was severe and substantial, but in comparing his age, the fact he's going to get that supervised release hit and a mandatory minimum of 180 months, I will ask the Court to grant the variance that would leave him within the guideline range at 180 months. Thank you.

(Hr. Tr., Doc. 100, at 5-7.)

Finally, to the extent that Wilburn contends that his counsel failed to argue against the sentencing enhancement for maintaining a drug premise (U.S.S.G. § 2D1.1(b)(12)) and for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood (U.S.S.G. § 2D1.1(b)(16)(E)) at his sentencing hearing, Wilburn fails to show how he was prejudiced by this alleged failure. Specifically, Wilburn offers no argument that could have been raised by his counsel that would have changed the outcome of his sentence in light of the record facts, the PSR, and the arguments set forth by the Government at his sentencing hearing.

Of note, in addition to the facts admitted to by Wilburn during his change of plea colloquy, the Government outlined in depth Wilburn's culpability as it related to the sentencing enhancements:

MS. OLSHEFSKI: . . . The government is asking the Court to sentence the defendant at the high end of the guidelines based upon the following argument, Your Honor. In order to reflect -- the sentence needs to reflect the seriousness of the crime, and there's no one who can credibly argue that the crimes that the defendant has pleaded guilty to are very, very serious, and this was his business.[6] This is what he did day in and day out. The sentence must provide adequate deterrence for not only this defendant but for anyone out there who is contemplating considering this business as a way to make a living.

The sentence must protect the public from future crimes of the defendant. So what the government considers most significant -- the key points for this sentence is deterrence for this defendant and to protect the public from this defendant. And in terms of -- I will address the first argument -- or the argument that was made by defense counsel alluding to the fact that there were only two people here really on equal footing, the defendant and Danielle Moorer. But the fact that others weren't arrested with these two defendants does not mean that the defendant -- that his network was limited to just himself and Danielle Moorer.

What the investigation revealed and what was ultimately corroborated by those not indicted as well as those indicted including the defendant is that it was the defendant who traveled on a regular basis to either New York or New Jersey to get the supply that he ultimately distributed to Danielle Moorer, who ultimately distributed it to her customers.

She didn't do that, Your Honor, without getting it from the defendant. It was -- she got what the defendant deemed she would get. So they weren't on equal footing in that regard. She received what he was willing to give her, and he did that. The defendant admitted to supplying other drug dealers and large quantities who had their own customers. One in particular was a guy by the name of Ak[ee] Miller.

The defendant admitted that this was an underling to him. This was during the course of the conspiracy. The defendant admitted -- and this was known to law

---

[6] The sentencing transcript indicates that the Government stated that "there's no one who can credibly argue that the crimes that the defendant has pleaded to are very, very serious, and this was his business." (Hr'g Tr., Doc 100, at 8.) Viewing this statement in the context of the remainder of the Government's arguments, the Government clearly intended to state that "there's no one who can credibly argue that the crimes that the defendant has pleaded to are *not* very, very serious, and this was his business."

enforcement -- that the defendant used kind of couriers from time to time to do his traveling for him to New York and New Jersey. One individual that was specifically identified was a woman by the name of Tianna. This was confirmed by the government.

The defendant paid her to go -- to use an Uber to travel either to New York or New Jersey to pick up supply. This occurred during the course of the conspiracy. The defendant controlled that, and the defendant admitted – and this was corroborated during the course of the investigation -- that in addition to Tianna the defendant used other unknown individuals to do this traveling for him to be a courier to -- when he could not travel to New York or New Jersey, he would use these individuals to reup, and they would bring the drugs back into the Middle District of Pennsylvania.

He would pay them to do this, Your Honor, either with cash or with heroin. The defendant admitted -- and this was corroborated by the investigation -- that an individual by the name of Joseph Monahan [*sic*] was used by the defendant from time to time to travel to reup for him, and the defendant paid Joseph Monahan with heroin because Joseph Monday was an addict. Monahan admitted to this, that this occurred during the course of the conspiracy, that the defendant acknowledged this, and it was corroborated by investigators during the course of this investigation.

And Danielle Moorer, to the extent she made any admissions, she spoke to law enforcement on one occasion, and she indicated that the defendant provided her with three to five bricks per day for distribution and that Moorer sold the heroin to customers daily, throughout the day. That's what she did. But she sold what the defendant gave her.

So the defendant also was in the business of flipping houses, so he claims, but what the investigation showed, Your Honor, is that it was all funded by drugs or drug proceeds. I know that I provided the Court with some photographs that were also shared with the defendant during the course – with offense [*sic*] counsel during the course of the discovery process and during the investigation.

What the purpose of those photographs, Your Honor, was because the government anticipated that there were going to be more objections involving criminal livelihood and maintaining drug involved premises, but these photographs show primarily Boland Street. And the purpose of showing these

photographs was because they depict all of these items that are in this house for reconstruction purposes. There are refrigerators. There are high end doors. There's flooring. There's air conditioners. There's a Jacuzzi. There's a freezer full of shrimp and lobster and steak. What we learned during the investigation is that the defendant had people working for him on these houses.

They were funded -- the purchase of these houses at low prices was funded by drug proceeds. He paid people with heroin to work in these houses. And he admitted this, and these individuals were all interviewed and corroborated -- corroborated this. They were addicts. They performed work, and the defendant paid them in heroin. Another way the defendant -- hand and hand with that is these items were stolen. All of these items that piled up in this house, Your Honor, were stolen with the assistance of the defendant and with the acquiescence of the defendant. These individuals were -- drug addicts would steal these items, bring them to the defendant and exchange them for drugs -- mostly drugs, sometimes cash.

The defendant laid out for us the scheme that was involved in his part in obtaining these items and had to do with switching receipts and things -- returning items. But the point is these items for these houses that were refabricated were stolen, and the people that did this were addicts, they were exploited by the defendant, and they were paid in heroin. All of this was funded by heroin. So to limit this enterprise of the defendant to just himself and Danielle Moorer is not accurate, Your Honor. And it forms part of the basis why the government is asking for a sentence at the high end of the guidelines. The defendant -- the P.S.R. reflects that, yes, he started his criminal career at the age of 14 and he's now 50 years old. But from the time of the age 14 except for the time that he was incarcerated he has essentially been just committing crimes, one right after another.

And now at 50 years old there's no evidence at all that any penalty that has been -- he's endured as a result of his crimes has deterred him or rehabilitated him. There's no evidence of that. The P.S.R. reflects that he's been evaluated in the past. He's been described by -- he's been described by a psychologist as being logical, coherent and intelligent with sociopathic features. That caught my attention, Your Honor, because I think that's indicative of someone who knows full well what he's doing and he chooses to continue to do it, and that's a dangerous man.

Arrest after arrest, sentence after sentence, nothing deterred him. He had five arrests before he was 18 years old, and those arrests were not for underage drinking or loitering. Those arrests were for robbery and burglary, receiving stolen property and aggravated assault. And then after turning 18, there were ten arrests for serious felony crimes leading up to around 2001 through 2014. There's a void in his criminal career between 2001 and 2014 because he was incarcerated for that time. But the P.S.R. reflects arrest, after arrest, after arrest in New York and New Jersey.

. . . .

And that's why our conspiracy starts in January of '15. . .

(Hr'g Tr., Doc 100, at 8-15.)

The recitation of Wilburn's criminal actions presented by the Government at Wilburn's sentencing hearing and his role in the drug trafficking conspiracy provided substantial support for the Court's imposition of the 198-month sentence in this case. Because Wilburn fails to raise any substantive arguments that his counsel's performance fell below an "objective standard of reasonableness" or that there was any "prejudice," this ground for relief fails under both prongs of *Strickland*. Therefore, Wilburn is not entitled to a hearing or any relief on this basis.

**E. Ground Five**

Wilburn's fifth ground for relief alleges that his "[a]ttorney failed to give sufficient advice" and that Wilburn "plead [*sic*] to all charges which include an 851 enhancement and would have not if he knew it would be included in the sentence." (Doc. 125 at 8.)

With respect to Wilburn's conclusory argument that his "[a]ttorney failed to give sufficient advice," this statement alone fails to allege any facts that would support a finding

that the performance of Wilburn's counsel fell below an objective standard of

reasonableness. At his change of plea hearing, Wilburn expressly affirmed that he was

satisfied with his attorney. (Hr'g Tr., Doc. 134, at 3.) Additionally, this conclusory argument

is not supported by any facts suggesting that Wilburn was prejudiced by his counsel's

performance. Wilburn was made fully aware of his sentencing exposure throughout the plea

process, including through the statements set forth in the plea agreement and from the

statements made by the Government during the change of plea hearing and the extensive

guilty plea colloquy conducted by the Court at that same time. Therefore, Wilburn is not

entitled to a hearing or any relief on this basis.

Wilburn's argument that he would not have pled guilty if he knew he was subject to a

21 U.S.C. § 851 sentencing enhancement also warrants no relief. A statutory penalty

enhancement for federal drug trafficking offenders with a prior felony drug conviction is set

forth in 21 U.S.C. § 851. To trigger this enhanced penalty, a prosecutor must file an

Information providing notice of which prior convictions support the enhanced penalty, which

the Government did in this case (*see* Doc. 42.)

Here, Wilburn knowingly and voluntarily both signed a plea agreement and pled

guilty in court to Count 1 of the Superseding Information filed against him. The plea

agreement itself informed Wilburn of his maximum sentencing exposure, the applicable

mandatory minimum sentence, and that the Court was not bound by the terms of the

agreement. (*See e.g.*, Doc. 47 at ¶¶ 1, 2, 25).

The defendant agrees to waive indictment by a grand jury and plead guilty to a Superseding Information, which will be filed against the defendant by the United States Attorney for the Middle District of Pennsylvania. That Superseding Information will charge the defendant with a violation of Title 21, United States Code, § 846, Conspiracy to Unlawfully Distribute and Possession with Intent to Distribute Controlled Substances. The maximum penalty for that offense is imprisonment for a period of life but a mandatory minimum period of 15 years, a fine of $20,000,000, a maximum term of supervised release of life but a minimum term of at least 10 years, which shall be served at the conclusion of, and in addition to, any term of imprisonment, as well as the costs of prosecution, imprisonment, probation, or supervised release ordered, denial of certain federal benefits, and an assessment in the amount of $100. At the time the guilty plea is entered, the defendant shall admit to the court that the defendant is, in fact, guilty of the offense(s) charged in that count.

(Doc. 47 at ¶ 1).

> Mandatory Minimum Sentence. Count 1 carries a mandatory minimum period of imprisonment of 15 years.

(*Id.* at ¶ 2).

> Court Not Bound by Terms. The defendant understands that the court is not a party to and is not bound by this Agreement, or any recommendations made by the parties. Thus, the court is free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for life, a fine of $20,000,000, a maximum term of supervised release of up to life, which shall be served at the conclusion of and in addition to any term of imprisonment, the costs of prosecution, denial of certain federal benefits, and assessments totaling $100.

(*Id.* at ¶ 25).

These terms were then reiterated to the defendant at the change of plea hearing and Wilburn indicated that he fully understood the terms of his plea agreement, including his minimum and maximum possible sentencing exposure at the time that he entered his guilty plea. (*See e.g.* Hr'g Tr., Doc. 134, at 5 ("THE COURT: I'm obliged to tell you that in this

case, the maximum sentence for conspiracy to distribute or possess with intent to distribute 1 kilogram or more of heroin and 500 grams or more of cocaine is a life in prison with a mandatory minimum of 15 years, at least 10 years of supervised release, up to life, a $20 million fine, and a $100 special assessment. Do you understand those things?  MR. WILBURN: Yes."); *id*. at 8-11).  Thus, Wilburn was clearly on notice at the time that he signed his plea agreement, and again during the change of plea hearing, that he was subject to a mandatory minimum sentence of 15 years in prison, a maximum sentence of life in prison, and that the Court was not bound by the plea agreement and specifically the sentencing recommendations set forth in the Agreement. Because the plea agreement and change of plea hearing make clear that Wilburn was informed of, and understood, the sentencing consequences of pleading guilty to the Superseding Information, he is unable to now argue that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced under *Strickland*. *See Bui*, 795 F.3d at 367 ("an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted."). Wilburn is therefore not entitled to a hearing or any relief on this basis.

## F.  Ground Six

Wilburn's sixth ground for relief alleges that his "[a]ttorney failed to nego[t]iate plea offers" and that his attorney "failed him in every aspect of the plea proceedings and sentencing hearings and that made the Attorney ineffective." (Doc. 125 at 8.)

31

Wilburn's argument for relief on this basis is entirely conclusory and unsupported by the record. Wilburn knowingly and voluntarily signed his plea agreement and attested to having reviewed it. (*See* Doc. 47, at 33) ("I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it."). Additionally, at his change of plea hearing, Wilburn stated that he had reviewed with his counsel the Superseding Information to which he pled guilty and that he was satisfied with the performance of his counsel:

> THE COURT: You did receive a copy of the superseding information in this case which represents the written charges against you. Have you received a copy of that?
>
> MR. WILBURN: Yes.
>
> THE COURT: Did you go over it with Mr. Cherundolo?
>
> MR. WILBURN: Yes.
>
> THE COURT: Did he answer any questions you had about it?
>
> MR. WILBURN: Yes.
>
> THE COURT: Are you satisfied with his advice and representation?
>
> MR. WILBURN: Yes.
>
> THE COURT: I take it that your willingness to plead guilty is as a result, at least in part, of having reached a plea agreement with the government?
>
> MR. WILBURN: Yes.
>
> THE COURT: Did you have an opportunity to read and discuss the plea agreement with Mr. Cherundolo before you signed it?

MR. WILBURN: Yes.

THE COURT: Does the plea agreement represent the complete understanding between you and the government?

MR. WILBURN: Yes.

THE COURT: Do you understand the terms of the plea agreement?

MR. WILBURN: Yes.

(Hr'g Tr., Doc. 134, at 3:12-4:13.)

Therefore, Wilburn's retroactive claim of dissatisfaction with his counsel's performance at the plea agreement stage is belied by his own voluntary affirmances to the contrary. Because Wilburn fails to allege any facts to support ineffectiveness on the part of his counsel, or that he was prejudiced by any alleged ineffectiveness, Wilburn is not entitled to a hearing or any relief on this basis.

## H. Ground Eight

Wilburn's eighth ground for relief alleges that "my attorney sold [sic] me that I would never get no more than 15 years but I received 16 ½ years." (Doc. 125 at 8.)

As the Court has explained, supra, Wilburn was repeatedly made fully aware of his sentencing exposure throughout the plea agreement process. Wilburn signed a plea agreement that clearly stated that he was subject to a mandatory minimum sentence of 15 years in prison and maximum sentence of life in prison. (See Doc. 47.) Additionally, the Court and the Government again informed Wilburn of his sentencing exposure during the

change of plea hearing. (*See e.g.* Hr'g Tr., Doc. 134, at 5, 8-9.) Therefore, Wilburn is not

entitled to a hearing or any relief on this basis.

Additionally, to the extent that Wilburn argues that the Court erred in sentencing him,

the Third Circuit has noted that:

> [b]ased on *Addonizio*, other circuit courts have concluded that a sentencing
> error is not a fundamental defect requiring § 2255 relief when a prisoner is
> sentenced below the statutory maximum. *See* [*United States v. Foote*, 784 F.3d
> 931, 937 (4th Cir. 2015)]; *see also Spencer* [*v. United States*, 773 F.3d 1132,
> 1138 (11th Cir. 2014)] (citing *Addonizio*, 442 U.S. at 186-87, 99 S.Ct. 2235)
> (noting that a sentence "less than the statutory maximum sentence prescribed
> by Congress" is lawful, and thus not a fundamental defect); *Hawkins* [*v. United
> States*, 706 F.3d 820, 822, 824 (7th Cir. 2013)]; *Sun Bear* [*v. United States*,
> 644 F.3d 700, 705 (8th Cir. 2011)]; *cf. Snider* [*v. United States*, 908 F.3d 183,
> 191 (6th Cir. 2018)] (citing *Addonizio*, 442 U.S. at 187, 99 S.Ct. 2235) (noting
> that the defendant's corrected sentence would fall within the same Guidelines
> range).

*United States v. Folk*, 954 F.3d 597, 605 (3d Cir. 2020).  Here, the statutory maximum

sentence for Wilburn's crime was life imprisonment. The Court sentenced Wilburn to 198

months of incarceration.  This sentence was well below the guideline range of 235 to 293

months imprisonment, was lower than the top of the adjusted sentencing guideline range of

210 months following the grant of the Government's motion for a downward departure, and

was clearly less than the statutory maximum imprisonment term of life. Therefore, to the

extent Wilburn argues there was a sentencing error on the part of the Court, he is not

entitled to a hearing or any relief on this basis.

Because Wilburn fails to allege that his counsel's performance fell below an objective

standard of reasonableness, or that he experienced any prejudice from his counsel's

performance, Wilburn fails to meet either prong of *Strickland* and is not entitled to any relief on his eighth ground.

## V. EVIDENTIARY HEARING

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).  "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. March 1, 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, no evidentiary hearing is necessary because "the motion and files and records of this case show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208, at *5 (internal quotations and citations omitted)); *see also Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a habeas petition"); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 300-02 (3d Cir. 1991) (declining to hold evidentiary hearing on petitioner's § 2255 ineffectiveness claim "absent identification of some facts that support a contention of ineffectiveness" because doing otherwise will encourage meritless petitions burdening judicial resources).

Here, Wilburn is not entitled to relief and his allegations rise only to the level of bare assertions that are clearly contradicted by the record. Therefore, no evidentiary hearing is necessary.

## VI. REQUEST FOR COUNSEL

A defendant does not possess a constitutional right to the appointment of counsel in a habeas proceeding. *See Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991) ("There is no 'automatic' constitutional right to counsel in a federal habeas corpus proceeding"), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d); *Gov't of Virgin Islands v. Warner*, 48 F.3d 688, 692 (3d Cir. 1995) ("A prisoner's rights in a habeas corpus proceeding are more limited than on direct appeal. For example, the Supreme Court has determined that while the Constitution guarantees the right to counsel on direct appeal, it does not guarantee the right to counsel in a habeas petition.").

As the Supreme Court has explained:

In most federal courts, it is the practice to appoint counsel in post-conviction proceedings only after a petition for post-conviction relief passes initial judicial evaluation and the court has determined that issues are presented calling for an evidentiary hearing. E.g., *Taylor v. Pegelow*, 335 F.2d 147 (C.A.4th Cir. 1964); *United States ex rel. Marshall v. Wilkins*, 338 F.2d 404 (C.A.2d Cir. 1964). See 28 U.S.C. § 1915(d); R. Sokol, A Handbook of Federal Habeas Corpus 71-73 (1965).

It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief. *See, e.g., Barker v. Ohio*, 330 F.2d 594 (C.A.6th Cir. 1964). Accordingly, the initial burden of presenting a claim to post-

> conviction relief usually rests upon the indigent prisoner himself with such help
> as he can obtain within the prison walls or the prison system. . .

*Johnson v. Avery*, 393 U.S. 483, 487-488 (1969). *See also, McCleskey v. Zant*, 499 U.S.

467, 495 (1991) (reiterating that there is no constitutional right to counsel in federal habeas

corpus)(citing *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("[T]he right to appointed

counsel extends to the first appeal of right, and no further")), *superseded on other grounds*

*by statute* as stated in *Banister v. Davis*, 140 S.Ct. 1698, 1707 (2020); *Williams v.*

*Pennsylvania*, 579 U.S. 1, 35 (2016) ("The postconviction petitioner has no constitutional

right to counsel.")(citing *Finley*, 481 U.S. at 555-557; *Johnson*, 393 U.S. at 488) (Thomas,

J., dissenting).

Further, a defendant's statutory right to the appointment of counsel in a § 2255

proceedings is limited.  A court may appoint counsel if "the interests of justice so require."

18 U.S.C. § 3006A(a)(2)(B).  In determining whether a petitioner is entitled to counsel, "the

district court must first decide if the petitioner has presented a nonfrivolous claim and if the

appointment of counsel will benefit the petitioner and the court.  Factors influencing a court's

decision include the complexity of the factual and legal issues in the case, as well as the pro

se petitioner's ability to investigate facts and present claims."  *Reese*, 946 F.2d at 263-264.[7]

---

[7] In addition, counsel must be appointed in a non-capital habeas proceeding if the district court determines that an evidentiary hearing is required.  *See* Rule 8(c) of the Rules Governing Section 2255 Proceedings ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").  However, for the reasons explained in this memorandum opinion, no evidentiary hearing on Wilburn's claims is necessary.

Here, the Court will deny Wilburn's request for the appointment of counsel. Wilburn has no constitutional right to counsel nor does he have a statutory entitlement to the appointment of counsel where the Court has determined that no evidentiary hearing is necessary on his motion. Upon review of Wilburn's § 2255 motion and relevant documents of record, it is evident that the interests of justice do not necessitate the appointment of counsel where Wilburn's habeas motion fails to present any nonfrivolous claim, including any issue warranting an evidentiary hearing, nor does the motion present any complex factual or legal issue.

## VII. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at \*8 (E.D.Pa. June 8, 2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a COA is not warranted on Wilburn's claims because the Court finds that reasonable jurists would not find this Court's resolution of Wilburn's constitutional claims debatable or wrong.

## VIII. CONCLUSION

For the aforementioned reasons, the Court will deny Wilburn's 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 125.)  A separate Order will follow.

Robert D. Mariani
United States District Judge